## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

FREDDIE L. CARLISLE, JR.,     )
    Plaintiff,              )
                          )
v.                      )     CIVIL ACTION NO. 2:19-00046-N
                          )
ANDREW M. SAUL,         )
*Commissioner of Social Security*,  )
    Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Freddie L. Carlisle, Jr. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon consideration of the parties' briefs (Docs. 17, 18, 19) and those portions of the administrative record (Doc. 14) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in

# I. *Procedural Background*

Carlisle filed the subject applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on February 22, 2016. After they were initially denied, Carlisle requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held on May 10, 2018; on May 23, 2018, the ALJ issued an unfavorable decision on Richardson's applications, finding him not disabled under the Social Security Act and thus not entitled to benefits. (*See* Doc. 14, PageID.91-105).

The Commissioner's decision on Carlisle's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's decision on December 10, 2018. (*See* Doc. 14, PageID.53-58). Carlisle subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social

accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 24, 26).

Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible.

Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v.*

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

*Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here...reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").[4]

---

[4] Nevertheless, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it...' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Additionally, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court...Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F.

Moreover, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court

App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

"conduct[s] 'an exacting examination' of these factors."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).  "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'"  *Ingram*, 496 F.3d at 1260  (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).  *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per

curiam) (unpublished).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Carlisle met the applicable insured status requirements through December 31, 2018, and that he had not engaged in substantial gainful activity since the alleged disability onset date of September 28, 2015.[7] (Doc. 14, PageID.96). At Step Two, the ALJ determined that Carlisle had the following severe impairments: osteoarthritis of the right ankle and foot with hallux rigidus of the right foot and cutaneous nerve injury of the right foot; bilateral sacroiliitis and sclerosis of the right sacroiliac joint; and multiple joint pain consistent with seronegative inflammatory polyarthritis. (Doc. 14, PageID.97-98). At Step Three, the ALJ found that Carlisle did not have an impairment or combination of impairments that met or equaled the severity of a specified

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 14, PageID.98).

At Step Four,[8] the ALJ determined that Carlisle had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[9] with the following exceptions: he is precluded from using foot controls to push and/or pull with the right lower extremity; he is precluded from climbing

---

[8] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

ladders, ropes, or scaffolds; he is precluded from exposure to excessive vibration, unprotected heights, and hazardous machinery; and he requires a sit/stand option that would allow him to alternate between sitting and standing positions at one hour intervals throughout the day." (Doc. 14, PageID.98-103). Based on the RFC and the testimony of a vocational expert,[10] the ALJ determined that Carlisle was unable to perform any past relevant work. (Doc. 14, PageID.103-104).

At Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of other jobs in the national economy that Carlisle could perform given his RFC, age, education, and work experience. (Doc. 14, PageID.104-105). Thus, the ALJ found that Carlisle was not under a disability as defined by Social Security Act during the relevant adjudicatory period. (Doc. 14, PageID.105).

## IV.  *Analysis*

### A.  Credibility Determination

Carlisle first argues that the ALJ's credibility finding on his subjective testimony as to the limiting effects of his impairments is not supported by substantial evidence. The undersigned is not persuaded.

A claimant may "attempt[] to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221,

---

[10] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

1223 (11th Cir. 1991) (per curiam). "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, … the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms. Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the district court … to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210–11 (11th Cir. 2005) (per curiam) (citations and quotations omitted).[11]

---

[11] Carlisle claims the ALJ should have found him disabled because it is "plainly obvious Mr. Carlisle has met this Circuit's pain standard." (Doc. 18, PageID.980). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223. A "claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* However, the "pain standard" is not itself determinative of disability. Rather, it simply establishes the minimum objective evidentiary support required for a claimant to establish disability based on his or her subjective testimony. Put another way, satisfying the "pain standard" is merely a threshold showing to requiring the Commissioner to consider disability based on a claimant's subjective testimony. *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) ("The Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 n.3 (11th Cir. 2011) (per curiam) (unpublished) ("Werner argues that because the ALJ found his conditions could reasonably be expected to cause the pain he described, the ALJ could not discredit the testimony. But Werner incorrectly assumes that meeting the threshold 'pain standard' for considering subjective testimony on pain is the end of the inquiry." (citing *Foote*, 67 F.3d at 1560)). Because the ALJ here considered Carlisle's subjective

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. *Id.* § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding her symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

*Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831–32 (11th Cir. 2013) (per curiam) (unpublished). "[C]redibility determinations are the province of the ALJ, and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence…" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (per curiam) (citation omitted).

Here, the ALJ's decision included a thorough discussion of Carlisle's subjective complaints. (*See* Doc. 14, PageID.99-100). The ALJ found that, while Carlisle's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,]" his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with

---

testimony, the Court need not evaluate whether the ALJ properly applied the "pain standard."

the medical evidence and other evidence in the record…" (*Id.*, PageID.103). The ALJ first cited inconsistencies in Carlisle's own reports of the limiting effects of his symptoms, noting that he "testified to significantly more limited activities of daily living" at the May 10, 2018 ALJ hearing "than represented in [a] Function Report" dated March 7, 2016, submitted on Carlisle's behalf. (*Id.*, PageID.99).

Carlisle suggests that the ALJ should not have relied on the Function Report because it was completed by someone else. However, he cites no authority indicating that an ALJ cannot rely on information provided in a Social Security form simply because someone else completed it on the claimant's behalf. Absent some indication in the record, an ALJ can reasonably assume that a Social Security form, whether completed by the claimant or someone else, is intended to convey truthful information about the claimant. Carlisle also claims that the ALJ's consideration of Carlisle's ability to do household chores "is inconsistent with the law of this Circuit."[12] (Doc. 18, PageID.978). Carlisle is incorrect, as the Social Security regulations clearly allow consideration of a claimant's "daily activities" in evaluating the credibility of the claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Moreover, the ALJ's decision adequately indicates that Carlisle's report of his daily activities was considered in conjunction with the medical evidence of record. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-

---

[12] In support of her claim that this is "the law of this Circuit," Carlisle cites only non-binding district court decisions and a decision of another circuit. (Doc. 18, PageID.978). See *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district.").

related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account … in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons.").[13]

For instance, the ALJ noted that, despite Carlisle claiming that "he could not work because of … foot pain[,]" treating orthopedist Dr. Hurowitz opined that Carlisle could perform at least sedentary work. (*See* Doc. 14, PageID.100).[14] The ALJ also remarked that in the records of primary care provider Dr. Perry Timberlake, Carlisle "is consistently noted to be healthy appearing, well nourished, well developed, in no distress, and ambulating normally[,]" with "normal gait and

---

[13] Carlisle also argues: "The ALJ mentioned Mr. Carlisle indicated in the forms he did not complete that he could do laundry and cleaning, but failed to mention that the forms also included that he did not do house or yard work because he was unable to put pressure on his foot. The statement provided by Mr. Robinson is not inconsistent with Mr. Carlisle's testimony where he indicated he might do a little dusting and different stuff like that around the house." (Doc. 18, PageID.978 (record citations omitted)). The fact that Carlisle can point to some evidence cutting against the ALJ's credibility determination, however, does not warrant reversal. *See Barnes*, 932 F.2d at 1358 ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence.").

[14] Carlisle claims that "Dr. Hurowitz limited Mr. Carlisle to sedentary work only for his right foot, as Dr. Hurowitz did not treat any other condition or impairment." (Doc. 18, PageID.979 (citing Doc. 14, PageID.621)). However, the medical record Carlisle cites in support of this assertion does not indicate that Dr. Hurowitz so qualified his opinion or otherwise did not consider Carlisle's condition as a whole in making it. (*See* Doc. 14, PageID.621).

station, with sensation intact." (*Id.*, PageID.101). The ALJ also discussed the largely normal and mild signs and findings noted in the records of Carlisle's rheumatologist, and from a February 2018 evaluation for injection therapy. (*Id.*, PageID.101-102).

While Carlisle asserts the ALJ ignored evidence favorable to him, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)). Here, the ALJ's decision adequately indicates that she considered Carlisle's medical condition as a whole in evaluating his subjective complaints. To a large extent, Carlisle questions the ALJ's credibility determination based solely on the fact that he has various impairments. "However, the mere existence of these impairments does not reveal the extent to which they limit h[is] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. And the records Carlisle cites as "confirm[ing] he would be even more limited ... than what was provided by Dr. Hurowitz" (Doc. 18, PageID.979 (citing Doc. 14, PageID.675, 724, 833, 837, 944) largely document normal and mild findings, such as an "unremarkable MRI of the thoracic spine" (Doc. 14, PageID.724) and "mild" to "minimal" to "no abnormality" in the vertebrae. (*Id.*, PageID.944).

"Even if the evidence preponderates against the Commissioner's factual

findings, the Court must affirm if the decision reached is supported by substantial evidence." *Ingram*, 496 F.3d at 1260 (quotation omitted). In reviewing an ALJ's credibility determination, "[t]he question is not ... whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished). The undersigned is satisfied that substantial evidence supports the ALJ's credibility determination; Carlisle's arguments to the contrary are unconvincing.

## B.    Dr. Timberlake's Medical Opinion

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship

with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citation omitted). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[ ], or has provided[ ],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x. 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence

supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). Failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. "But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished). [15]

Carlisle next claims that the ALJ reversibly erred in rejecting the medical opinions of treating physician Dr. Timberlake. The ALJ summarized Dr. Timberlake's opinions as follows:

> In a May 24, 2017 treatment note, Dr. Timberlake, the claimant's primary care provider, provided that the claimant was "completely and totally disabled to do gainful work now or in the future" (Exhibit 13F). The record includes a May 24, 2017 Medical Source Statement submitted by Dr. Timberlake … (Exhibit 12F). He opined that in an eight-hour workday, the claimant could sit for only two hours, stand or walk for only one hour, and lift only five pounds occasionally to one pound frequently. He opined that the claimant could never bend

[15] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions. However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Carlisle's present applications. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

and/or stoop or reach; rarely push and pull or climb and balance, and occasionally perform gross manipulation, fine manipulation, operate motor vehicles, and work with or around hazardous machinery. He opined that on the average, the claimant's impairments or treatment would cause him to be absent from work more than three times a month. The record also includes an April 13, 2018 Medical Source Statement completed by Dr. Timberlake reflecting the same opinions (Exhibit 18F).

Dr. Timberlake also completed a May 24, 2017 Clinical Assessment of Pain, in which he indicated that the claimant's pain was profound and intractable, virtually incapacitating (Exhibit 12F). He indicated that physical activity would increase the claimant's pain to such an extent that bed rest and/or medication would be necessary. He indicated that the claimant's medication would place severe limitations on even the most simple everyday tasks. The record also includes an April 13, 2018 Clinical Assessment of Pain completed by Dr. Timberlake reflecting the same opinions and also opining that the claimant would be off task for 25% or more of a typical workday in that his symptoms would be severe enough to interfere with attention and concentration needed to perform even simple work tasks (Exhibit 18F).

(Doc. 14, PageID.102-103). The ALJ found that "Dr. Timberlake's extreme opinions are entitled to little to no weight" because "[h]is opinions are not consistent with or supported by the record as a whole, including his own treatment notes, which are discussed [previously in the decision]." (Doc. 14, PageID.103).[16] As the ALJ noted in discussing Dr. Timberlake's treatment notes spanning May 2016 to April 2018:

---

[16] Carlisle concedes, correctly, that the ALJ did not err in failing to give substantial or considerable weight to Dr. Timberlake's statement that Carlisle was "completely and totally disabled to do gainful work now or in the future." *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (providing that a "statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled[,]" and that such statements" are not medical opinions, … but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability").

Many of the treatment notes are cursory in nature, with few physical findings delineated other than tenderness at multiple joints, including the lower back and hips, and some limited range of motion. As of April 2018, Dr. Timberlake's diagnoses included lumbar disc prolapse with radiculopathy, neuropathy, arthritis, and inflammation of the sacroiliac joint (Exhibit 17F). The undersigned emphasizes, however, … that an MRI of the lumbar spine in October 2017 showed only minimal degenerative disc disease, and there are no diagnostic test results indicating radiculopathy or neuropathy. An MRI of the cervical spine in February 2017 was normal (Exhibit 10F). Dr. Timberlake's treatment notes do not indicate any significant medication side effects, contrary to the claimant's hearing testimony, and in fact, his note in April 2018 provided that the claimant was tolerating his medication well at the current dose without adverse side effects (Exhibit 17F). The claimant is consistently noted to be healthy appearing, well nourished, well developed, in no distress, and ambulating normally (Exhibits 13F and 17F). He consistently has normal gait and station, with sensation intact.

(Doc. 14, PageID.101). The ALJ, therefore, adequately explained that Dr. Timberlake's opinions were not supported by his own treatment notes and were not bolstered by the other evidence of record. Again, Carlisle largely attempts to contradict the ALJ by simply pointing to diagnoses in the record, and some evidence that could be seen as more favorable to Dr. Timberlake's opinions. He also suggests that it was inconsistent to reject Dr. Timberlake's opinions while giving "some weight" to those of treating orthopedist Dr. Hurowitz, but this is again based on Carlisle's unfounded belief that Dr. Hurowitz's opinions applied only to Carlisle's right foot, a contention the undersigned has previously rejected, *see* n.14, *supra*. The ALJ adequately articulated "good cause" to reject Dr. Timberlake's opinions, and substantial evidence supports that good cause.

## C.     Other Impairments

Carlisle next argues that the ALJ's decision is otherwise not supported by substantial evidence because the ALJ did not adequately account for other conditions noted in the record and otherwise failed to consider the record as a whole.  Carlisle's arguments on this point are underdeveloped and unconvincing. The ALJ's decision adequately indicates consideration of the record as a whole and links her conclusions to substantial evidence in the record, and this Court "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."  *Winschel*, 631 F.3d at 1178.  The undersigned is not persuaded that Carlisle's arguments amount to anything more that requesting the Court to do exactly that.

## D.     New Evidence to the Appeals Council

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process, including before the Appeals Council.  The Appeals Council has the discretion not to review the ALJ's denial of benefits.  But the Appeals Council must consider new, material, and chronologically relevant evidence that the claimant submits."  *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam) (citations and quotations omitted). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is subject to judicial review … [W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our de novo review."  *Id.* at 1320–21 (quotations omitted).  Moreover,

effective January 17, 2017, the Social Security regulations also state that the Appeals Council will only consider new evidence if the claimant shows "good cause" for not submitting the evidence to the ALJ. *See* 20 C.F.R. § 404.970(b).

Carlisle claims the Appeals Council reversibly erred in refusing to consider (1) a Medical Source Statement and Clinical Assessment of Pain, both dated August 13, 2018, and completed by Dr. Richard Jones (Doc. 14, PageID.80-84), and (2) a functional capacity evaluation dated August 7, 2018, and completed by John Ramsey, PT. (*Id.*, PageID.86-88). The Appeals Council found that Dr. Jones's opinions were not material because they "did not show a reasonable probability that [they] would change the outcome of the [ALJ's] decision." (*Id.*, PageID.54). *See Washington*, 806 F.3d at 1321 (new evidence is material when "there is a reasonable possibility that [it] would change the administrative result" (quotation omitted)). No reversible error has been shown. Carlisle does not argue that Dr. Jones should have been considered a treating physician,[17] and the opinions of non-treating physicians "are not entitled to deference ..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam).[18] Dr. Jones's opinion was also conclusory, with no

---

[17] While Dr. Jones's electronic signature is on records from the Clinic for Rheumatic Diseases that were submitted both to the ALJ and to the Appeals Council, his role was limited to reviewing and approving notes from examinations conducted by a Certified Registered Nurse Practitioner (CRNP).

[18] *Accord Everett v. Soc. Sec. Admin., Comm'r*, 777 F. App'x 422, 425 (11th Cir. 2019) (per curiam) (unpublished) ("Opinions by one-time examiners are not entitled to deference or special consideration." (citing *McSwain*, 814 F.2d at 619)); *Machuat v. Acting Comm'r of Soc. Sec.*, 773 F. App'x 490, 492 (11th Cir. 2019) (per curiam) (unpublished) ("As a one-time examiner, Dr. Rodriguez's opinions were unentitled to deference." (citing *McSwain*, 814 F.2d at 619)); *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 750 (11th Cir. 2018) (per curiam) (unpublished) ("[T]he opinions of non-

meaningful explanation of how he arrived at his conclusions, and the limitations he imposed were similar to the "extreme" ones imposed by Dr. Timberlake that the ALJ had found to be unsupported by the record. Thus, the Appeals Council correctly concluded there was not a reasonable probability that Dr. Jones's opinions would change the outcome of the ALJ's decision.

As for the functional capacity evaluation, the Appeals Council found it was not chronologically relevant because it did "not relate to the period at issue" and therefore did "not affect the decision about whether [Carlisle] w[as] disabled beginning on or before May 23, 2018[,]" the date of the ALJ's decision. (Doc. 14, PageID.54). The Appeal Council did not err in this determination. New evidence is "chronologically relevant" if it "relates to the period on or before the date of the hearing decision…" 20 C.F.R. §§ 404.970(a)(5), 416.1570(a)(5). Even "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." *Washington*, 806 F.3d at 1322.

> In <u>Washington</u>, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. [806 F.3d] at 1319-20. Th[e Eleventh Circuit] concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment

---

treating examiners are not entitled to deference or special consideration." (citing *McSwain*, 814 F.2d at 619)); *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018) (per curiam) (unpublished) ("An ALJ generally gives an opinion from an examining physician greater weight than a non-examining physician, but the agency's rules do not provide that an examining physician's opinion may receive 'controlling weight' as a treating source might.").

records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case").[19]

*Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (per curiam). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 936, 940 (11th Cir. 2017) (per curiam) (unpublished) ("Here, we conclude that the opinions contained in Dr. Wilson's materials are chronologically relevant even though Dr. Wilson examined Hunter four months after the ALJ's decision. As in *Washington*, Dr. Wilson reviewed Hunter's medical records from the period before the ALJ's decision in preparing the evaluation. He also considered Hunter's statements about that same period, including her history of panic attacks. And the evaluation here was conducted closer in time to the ALJ's decision than the evaluation in *Washington*."). On the other hand, in *Hargress*, the Eleventh Circuit held that the Appeals Council properly found a medical opinion was not chronologically relevant because (1) "nothing in the form or any other documents indicated that [the physician] evaluated [the claimant]'s past medical records when forming that opinion[,]" and (2) the physician did not begin treating the claimant until after the date of the ALJ's unfavorable decision. *Id.* at 1310. *See also Lindsey v. Comm'r of Soc. Sec.*, 741 F. App'x 705, 712 (11th Cir. 2018) (per curiam) (unpublished) ("Dr.

---

[19] Courts "review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam). Therefore, evidence that an impairment has worsened after the date of the ALJ's unfavorable decision is not relevant to review of that decision. *See id.* ("The ALJ's decision in this case was rendered on March 28, 1995. While Dr. Felten's opinion one year later may be relevant to whether a deterioration in Anastasia's condition subsequently entitled her to benefits, it is simply not probative of any issue in this case.").

Rodolfo Reni's opinion in the 'supplemental mental impairment questionnaire' is not chronologically relevant, as nothing in the record indicates that: (1) Dr. Reni relied on Lindsey's prior medical records; or (2) Dr. Reni treated Lindsey during the relevant period." (citing *Hargress*, 883 F.3d at 1309-10)).

Here, nothing in the record indicates that Innercare Physical Therapy treated Carlisle until after the ALJ's decision, and the functional capacity evaluation, dated almost three months after the ALJ's decision, did not indicate that the examiner had considered medical records predating the ALJ's decision in completing the evaluation. Accordingly, the Appeals Council properly found that it was not chronologically relevant.[20]

Carlisle has failed to show reversible error by either the ALJ or the Appeals Council. Accordingly, the Court finds that the Commissioner's final decision

---

[20] Moreover, the functional capacity evaluation appears to have been completed by a physical therapist, who is not an acceptable medical source under the Social Security regulations. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a); *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833–34 (11th Cir. 2011) (per curiam) (unpublished) ("In order for a statement to be characterized as a 'medical opinion,' it must be from an acceptable source and address acceptable subject matter. 20 C.F.R. § 404.1527(a)(2). [A] medical opinion must be a statement from a physician, a psychologist, or another 'acceptable medical source.' *Id.* Other acceptable medical sources do not include nurses, physicians' assistants, or therapists. *See* 20 C.F.R. §§ 404.1502 (defining acceptable medical source as those enumerated in § 404.1513(a)); 404.1513(d)(1) (listing medical sources that fell outside of the definition of 'acceptable medical source')."). While medical sources who are not acceptable medical sources may sometimes be entitled to significant weight, that depends on "the particular facts in a case … For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). As noted, Innercare appears to have only treated Carlisle after the ALJ's decision, and the functional capacity evaluation does not provide supporting evidence or a detailed explanation for its findings. Accordingly, the Appeals Council also properly declined to consider it because it was not material.

denying Carlisle's applications is due to be **AFFIRMED**.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Carlisle's February 22, 2016 applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 19th day of March 2020.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**